We'll call our first case, United States of America v. Abraham Cruz, Mr. Ulrich. Good morning, Your Honors. My name is Frederick Ulrich. I'm an assistant federal public defender in the Middle District of Pennsylvania, and I represent the appellant, Abraham Cruz. We'd like to reserve three minutes of our time for rebuttal. That request will be granted. Thank you. In this case, Mr. Cruz's position is that the government's interest in formalizing the punishment is insufficient or inadequate to overcome his significant constitutionally protected liberty interest in being free from the involuntary injection of psychotropic drugs. Addressing at the outset the government's argument that this issue has been waived or forfeited, our position is... Actually, speak into that microphone. Sorry. Our position is that there is no procedure within the rules, either criminal or civil, to cover these cell proceedings. Counsel should not be faulted for not taking a step that isn't formalized within the rules. But even looking beyond what counsel did in this particular case, she did not concur in the government's motion to have an evidentiary hearing. Put the government... Well, you acknowledge that you're on... There was no objection, and you're on... You acknowledge that there was no objection in the district court. No objection to the legal issue, but it was a medical factual hearing. The witnesses wouldn't have had any knowledge or expertise, and I think they even acknowledge that within their report, and the judge acknowledges it at the outset of the hearing. So for those reasons, there wouldn't have been any reason for her to lodge an objection at an evidentiary hearing concerning a legal issue that would be determined outside of the testimony. Well, you're on plain error, though, if you don't lodge an objection, aren't you? Not if there is no procedure for lodging the objection. In a criminal case, the attorney would, under the rules, be obliged to make a judgment of acquittal at the end of the case. There's no such procedure at all in cell proceedings. In fact, if anything, perhaps maybe it ought to be incorporated into the rules in one form or another. But here, counsel, at the end of the hearing, asked for additional time to consult with her expert. It was denied. The court then 48 hours later issued an opinion. So even if counsel wanted to lodge some sort of sufficiency objection to this particular aspect of the cell proceeding, there really wasn't an adequate opportunity. I guess my problem with this, and I see the point that you're raising. I understand that point. But rereading the transcript again of that hearing, there wasn't even the semblance of an argument made before the district court at that hearing that, in fact, the government had not shown that they had a substantial interest. There was, I would call it, a limited amount of cross-examination of the psychologist and the psychiatrist. There was some limited argument by counsel. There were intermittent comments by Mr. Cruz. But nowhere in the midst of that transcript or anywhere in writing other than a certificate of non-concurrence, which was actually filed by the government, wasn't even filed by counsel at that time. I think that's permissible under the local rules. Yeah, but there was nothing that said, you know, we challenge whether or not at sentencing the government has substantial interest for forced medication. Well, our position is simply that this was a hearing on the medical aspects of the case. These doctors and the psychologists wouldn't have had any knowledge, which they acknowledge in their reports. Could the local rules provide if you don't file an opposition that the motion would be deemed supported? That's true. So, you know, you're arguing a case against the very rules that you practice under. I'm not sure I'm following your... Well, the local rules say you support the motion. If you don't oppose it, you file nothing in opposition, not even legal. Forget about factual, not even any legal opposition. Well, the local rules say that if you do not concur in a motion, there's a hearing on it or a brief. Well, it says you don't oppose it, the local rule. We didn't concur in it. There was a certificate of non-concurrence attached to the motion after consultation with counsel. Now, if we're going to sort through the local rules, I can tell you that there are a couple of infractions that were, you know, in this particular case. For instance, when you file a motion that's not concurred in, you're supposed to file a brief. The court's then supposed to set a briefing schedule, and you get a chance to file a response. Well, getting to the merits of it, do you agree that SELL is the road map in this case? I don't believe it's a road map. I just think the weighting is a little bit different when you're not dealing with a trial interest. And turning to that part of the government's argument, SELL, the decision the court was most concerned with, was a prospectorial interest that a governmental entity has in bringing somebody to trial. And in that interest, they're talking about a timely trial, a speedy one, one in which the defendant has the ability to consult with counsel, one in which the government doesn't have to worry because of delay that their evidence might not be around, that witnesses' memories might fade. In this particular case, once the government obtained a conviction of Mr. Cruz, that interest was realized. The interest that remained is a judicial one in terms of prescribing the appropriate punishment, not a prosecutorial one. They can advocate for a particular punishment, but the interest is no longer a prosecutorial one. Just a minute. Are you saying that SELL protects only a prosecutorial interest? I'm saying SELL protects a trial interest, which is a prosecutorial interest. A prosecutor has an obligation, that's part of the division of government, to bring a case to trial. That's their job. Once a case has been brought to trial, a conviction obtained, then the interest in terms of what's left under SELL has shifted, at least somewhat, because now what's left is a judicial determination over the particular punishment. Well, I'm not sure I agree with you that SELL protects only a prosecutorial interest. But if it doesn't, there are other interests which, I don't know, I don't think it's correct to say they're only judicial. I mean, there is the interest that Congress enacted in terms of an appropriate sentence, right? Congress set the parameters of what an appropriate sentence could be, a maximum. And I don't want to suggest that it's only a prosecutorial interest. Well, it's not just a maximum, you know. Under 3553, the factors that should be examined in reaching the sentence. In other words, are you saying in this instance that that governmental interest is protected by a provisional sentence? It could be, depending upon the facts of the case. Sometimes a maximum sentence might be appropriate, not in this particular case. Well, that's the whole point. We don't know, and that's the reason it's a substantial interest that requires inquiry, isn't it? It is a substantial interest. It requires inquiry. But what the cell standard is weighting is the governmental prosecutorial interest in getting this case to trial before their evidence disappears or becomes compromised in some fashion. Once we've had that occur and we're in the sentencing portion of the case, the interests are certainly different, and they can't be weighted the same. Now, essentially what you're here doing, you're asserting that Mr. Cruz has a constitutional right, a liberty interest, to not be medicated against his will at this stage of the proceeding. Correct. And that's what you're arguing? Yes. And the government argument is that they have a substantial interest, as the government, in seeing that the court proceed forward with a sentence in order to make sure that not only Congress's intent under the sentencing guidelines, but the interests of justice are carried out, that the appropriate sentence is given. Aren't those the two sides? I believe so. I mean, the government certainly has an interest in ensuring some justice is meted out in this particular case. Yeah. Okay. So those are the two sides. I guess one of the things that I see lacking in this argument, and I'm not sure who has the burden of making it, is there's a difference in how under 18 U.S.C. 42-41, and particularly 18 U.S.C. 42-44, depending on whether Mr. Cruz is medicated and then sentenced, or whether he's not medicated and he's treated in a form of a civil commitment, the question is where the treatment takes place. I mean, the treatment will not be theoretically the same treatment, depending on whether or not he is or is not sentenced. Would you agree with that? I would agree with that. Okay. Shouldn't that perhaps be the focal point of your argument, the focal point of our inquiry? Well, I think the 42-44 proceeding is something that would occur subsequent. If he's not medicated? If he's not medicated. Okay. And then at that point, the government would move for a proceeding under 42-44, and a determination would be made whether he should be provisionally sentenced and committed. Okay. But I don't believe that 42-44, or any of the cases construing it, would necessarily permit the government at that point, or the Bureau of Prisons for that matter, to forcibly medicate Mr. Cruz. I don't think they would either. No, they would not. The upshot of the problem is that Mr. Cruz ends up probably in a worse position because of the decision he made at some point before he was deemed incompetent to not be medicated. All right. We understand that. Is it your position at all that he's a danger to himself or to others? He's not a danger to himself or others, and there's no evidence that he is. So Harper is not involved in this case? Harper is not involved. All right. But you have acknowledged in your brief that the government has a substantial interest in sentencing him after a conviction. I'm not sure I acknowledged that in my brief. There is an interest in sentencing Mr. Cruz. I understand that. But these cell factors are weighted pretty heavily on the trial side of that interest as opposed to the sentencing side of it. And even if this were a death penalty case where you had the ultimate punishment hanging out there and an individual who was incompetent, it's far from clear that you could actually medicate the person and put him to death. So this is something below even that. Our position is that even looking at the statutory penalties that apply in this particular case, he's somewhat below what occurred in Cell where there was an attempted murder of an FBI agent and somewhat below what this Court looked at in Grape where there was – except the district court looked at the seriousness of the crime, the potential for incarceration, the maximum sentence, his score for guideline purposes, and determined that looking at these things, this is – that the crime is serious and that the government's interest in medicating him outweighs his interest in privacy. Now, you have two constitutional interests which are at loggerheads here. And what is wrong with the government's – I should say the district court's determination that the interest of society trumped his First Amendment interest in not being forcibly medicated? I'm not sure how to frame what is wrong with that except that Mr. Cruz has made a determination that he doesn't want his thoughts altered with psychotropic medication. It's a pretty significant interest. The Supreme Court's acknowledged it's pretty significant. It's only available in a very few narrow circumstances. And our position is once you get to the sentencing portion of this case, the balance is tipped and the district court didn't really acknowledge that. They simply talked about it in terms of punishment without really also acknowledging the fact that the circumstances of the case were not that aggravating. Yes, he threatened individuals. He was convicted of that. But frankly, this case could have been just as easily handled by a call to crisis intervention and a 302 commitment under the Mental Health Procedures Act as opposed to a federal prosecution. He goes into the Social Security Disability Office after being on years of benefits for mental health issues and acts out. That's not unusual. He's not convicted of acting out or threatening the person he dealt with over a video monitor who happened to be in Pittsburgh while he was in Harrisburg. Instead, what happens is he's walking out the door. The building security officer hears him say something about toe tags, calls somebody in Social Security who calls somebody in Philadelphia who then calls Mr. Cruz and essentially precipitates the threats that ultimately resulted in his conviction. Beyond that, in terms of the sentencing considerations that the district court relied upon, our position is simply that relying on a preliminary guideline assessment and a pre-sentence report poses its own problems because we believe that the underlying simple assault convictions that form the basis of the career offender guideline that's being applied are challengeable under this court's own precedent. And even if they weren't, and even if that guideline did apply, it would be at least appropriate to look at Mr. Cruz's mental health history in terms of assessing whether he might be eligible for a departure under the guidelines or at a bare minimum a variance which would affect the punishment component. Now, you didn't argue that in your main brief. You argued that only in the reply brief. In the reply brief, yes. Now, haven't you waived that by not arguing that in your main brief? Waived the punishment part? Haven't you waived the variance question, the question of whether or not it would be appropriate for the court to look at the mental health issues? You didn't raise that initially. It was not raised initially in our principal brief. It came about as a consequence of an argument that we first encountered in connection with the government's responsive brief. What does your client have to gain by not being medicated? If he's not medicated in sentence, he's going to be institutionalized in any event. What is his interest such that it's superior to the government's interest to bringing this criminal matter to its ultimate fruition, i.e. sentencing and resolution of the criminal matter? His interest is simply the one the U.S. Supreme Court has identified, that he doesn't want to be psychotropically medicated and have his thoughts altered. But the government has the right to do that under established law if it's serious and the government's interest, so to speak, trumps his interest in privacy. That's correct, but we believe that this falls outside the narrow range of circumstances that's been authorized by a Supreme Court precedent. In fact, I don't believe there's any case that's actually addressed this precise circumstance squarely. The Wood case. The Wood case is a little bit different because there, the defense lawyer, me, actually asked to have his client medicated. He went to the judge and asked him. So that issue was off the table from the judge's perspective and the parties conceded that it was an important governmental interest. So that issue wasn't addressed and it's a district court opinion in any event. But I believe that that's distinguishable for those two reasons alone. Well, didn't Justice O'Connor of the Ninth Circuit give us a road map here for whether or not something of this nature should go forward? The four aspects that she laid out in her opinion in the Court of Appeals for the Ninth Circuit. Well, I believe they're the same as what's been laid out by this court in Grape. I don't think that's any different. The only difference really is where we are, at what stage we are in the process and whether the sentencing stage should have somewhat lesser weight in the balance. Well, that was never acknowledged yes or no in her opinion, but it's for certain that the government has an interest here. And as far as I can see, it's a weighing of your privacy interest against the government's interest, which the district court weighed adversely to you. And you're in a position where you have to show we're in an abuse of discretion standard of review, are we not? I don't believe so. I don't think it would make actually any difference. Well, there's four, under Justice O'Connor's opinion, there are four aspects to it. Only the first is plenary review. The three others are all abuse of discretion. That's correct. And the first one is whether the government has a substantial interest in resolving this. And you don't agree with me, but I sort of read your brief as acknowledging that the government has a substantial interest in bringing a criminal matter to its fruition. Bringing it to trial. We just believe that acknowledging that the cell framework works, it just works with a different balance at the sentencing stage as opposed to the trial stage. And for those reasons, we would ask the Court to vacate Judge O'Connor's report. Okay. We'll have you back at rebuttal. Mr. Cerruti. Good morning, Your Honors. May it please the Court, Stephen Cerruti on behalf of the United States. The United States doesn't necessarily disagree with some of the things that opposing counsel said as far as how the balancing of the factors may be altered by the fact that we're dealing with a sentencing here as opposed to going to trial. Cell engraved certainly addressed pretrial determinations of incompetency and the potential for forcible medication. That being said, we don't think that it gets rid of those interests, and indeed I think some of the interests are strengthened. By going through the interests that are discussed in cases like Cell and this Court's decision in Grape, concerns like criminal law's purpose in protecting basic security still exists, maybe even more so when you have someone who has actually been convicted of a crime as opposed to just being accused of a crime. The need to encourage respect for the law, deterrence. Again, that exists both pretrial and pre-sentencing, and after someone has been convicted in this case. There's a governmental interest, perhaps even more so in this situation in finality. Not only have we had a trial, now we are looking to try and wrap things up and get an individual sentenced based on a conviction. Well, you know, the District Court found that he had a, forget how she put it, a moderate to high interest, or he had a moderate to high propensity to harm others. That is dangerous, in effect. So are we properly under Cell? Why look at this case through Cell? This is a Harper case. Well, because the Harper analysis was done by the individuals down at FCI Butner, where he's currently being housed, and determined that in that very restricted institutional setting, he is not a danger to others or to himself. And Harper talks about, in that setting, whether he's a danger to himself or others. Now, whether he would be a danger to himself or others in a less controlled setting, perhaps if he was released, that we don't know. That's somewhat speculative at this point, though he does have a history of violence, assault convictions, as Judge Connor noted in his opinion when weighing these various factors. Now, that being said, because if there is no forcible medication here in this case, then we go and proceed under 18 U.S.C. 4244-D, which would result most likely in a provisional sentence, and therefore he's incapacitated and likely going to be held in the same type of restricted setting. So I don't think there's really much of a concern at this point  I think the question is whether he is medicated, returned to competency, and a proper sentencing is done, or whether he is not medicated, this returns to the district court, a provisional sentence is entered, and he ends up being civilly committed in that manner for 20 years. Doesn't that cut a little bit against your interest? Doesn't 4244 cut against your substantial government interest argument? Certainly. There's no question that the existence of 4244-D and the provisional sentence idea cuts against the government interest. Part of the government interest is, of course, making sure that a dangerous individual doesn't go out there and have the potential of harming others again. That being said, it gives rise to a different interest. Stop you right there. The existence of 4244 gives you that assurance? Yes. That at least as to the outside, no one's going to be harmed by Mr. Cruz because he's going to be held under a provisional sentence if he's not sentenced by the court? Correct. There's no denying that. That being said, it does give rise to other interests. We have an individual who has actually been convicted now, not someone who has just been accused of a crime, but someone who has been convicted of a crime. So it gives rise to the interest then, which has been recognized in some of the questioning earlier, in Congress's interest in someone being sentenced for the crime that they committed, for the circumstances that they're in under the regime that's put forth through the sentencing guidelines. And it also gives rise to an interest in potentially Mr. Cruz wanting to be returned to competency. He's obviously not competent to make that decision for himself now, but there is a set of competing liberty interests. The government understands there is a liberty interest in not being forcibly medicated with psychotropic drugs. But Mr. Cruz says through counsel and tried to say fairly inartfully at the hearing, I don't want to be medicated. Counsel is saying he doesn't want to be medicated, and we think that's a liberty interest that's of constitutional magnitude. He's also expressed in his dealings with the folks down at Butner that he also doesn't want to be incarcerated indefinitely. Did the district courts sufficiently survey whether 4244 would have been an alternative that would have satisfied both your client, the government, and the defendant? There's nothing in the record that indicates that 4244 was raised. Now you acknowledge that if 4244 had been used, that that would, to a substantial extent, diminish your interest in this case. It would diminish the government's interest insofar as we're worried about incapacitating someone who has the capability of committing additional crimes. It does not address a number of the other concerns and a number of the other interests that the government has, both under Sell and under Grape, such as being able to have the availability of witnesses at a sentencing, being able to have victim statements at a sentencing. If there's a 4244 hearing and he retains competency 10 years down the road, some of those individuals may not be available anymore when the time comes for a proper sentencing. So again, the government concedes that the existence of 4244 obviates one interest, which is an important part of establishing a significant interest. However, there are a multitude of other interests addressed in both Sell and Grape that would still exist. You didn't oppose Cruz's request to stay the order in a district court. No, I don't believe that was opposed. Well, my question is, why didn't you oppose it? And your failure to oppose the motion does not indicate to us some indication that there's strength to the defendant's motion. I don't know that it indicates that there's some strength. I think it indicates that the government recognizes that we have competing liberty interests here potentially at stake and that it's something that would be appropriate to have the Court of Appeals address because, of course, once he's injected with the antipsychotic medications, you can't unring that bell. And so I think that the trial at USA made the determination that he was not going to oppose the stay based on that purpose. It's interesting here. No other court other than the Wood Court, which Mr. Ulrich has some familiarity with and tried to distinguish, no one else has dealt with this subject. Is this really a Sell case? I'm very concerned about it. I think this is a Harbor case. I don't know what we're talking about Sell for. Well, if we could stay on Sell for a second. Is it really a Sell case? I believe so because as I've laid out, many of the same concerns that existed in Sell for the pretrial status of that case, while they may be slightly weighted differently, certainly not to the extent that opposing counsel argues, they apply when you're talking about a pre-sentencing case as well. I think that what you have when you look at the language of 4244, it allows a district court judge to have a hearing, look at the situation, and decide whether proceeding to sentencing, which may require, although it doesn't expressly say this, read it this way, to have a proper sentencing, even if that may require involuntary medication, or it can proceed to go down a provisional sentence road. But the district court never considered 4244. There is an indication that it did. So that doesn't Sell here. Jay Collins says he thinks it maybe is a Harper case. As for the Harper, again, yes, we have in Sell and certainly in Grape the discussion that you look at Harper before you look at Sell. Again, the analysis was done on that saying that because he's in the restricted facility that he is right now, he is not currently a danger to anyone or himself. Therefore, Harper is taken off of the table. Then you proceed to Sell if you're looking at trying to establish why there should be involuntary medication. Is it your position, Mr. Suri, by the way, excuse me, this is this is a plain error case. Yes, that's our position. I believe it was incumbent upon opposing counsel at some point to alert the district court that there was an argument over where their important governmental interests at stake here. There were a number of opportunities to do so, and they passed on every single one of them. Did they do that at the time of the requesting to stay? Yes, but that's after the district court has made its decision. Before we got it. Well, yes, it was certainly before it arrived here. Well, the defendant also says this is not like plain error with a criminal conviction. We're dealing with something which is criminal, but it's more quasi criminal or almost civil because you're talking about doing something forcibly medicating someone. It's not really a criminal appeal. Well, plain error can apply in civil cases as well. I understand the idea that perhaps plain error is weakened in this particular case because we are talking about somebody's liberty interest. That being said, I think at least the district court should have been given an opportunity, and the United States should have been given an opportunity to respond to any arguments about the lack of an important governmental interest, if that was going to be an issue that Mr. Cruz wished to raise. Even if we are under plain error, there are some exceptions to plain error. Basic fundamental rights. You're dealing with constitutional rights here. His right not to be, I mean, he medicated. He's going to have to be forcibly medicated. They're going to do it their way or they're going to do it even if he doesn't want to do it their way. Correct. So if we're under plain error, there are exceptions, and that's when there are fundamental structural difficulties in the case. Sure. Mr. Cerulli, if this is a cell case, under the cell analysis, it seems to me all of the government's interests, except those you identified that are associated with finality, are adequately accounted for by a provisional sentence. And I don't know that the argument that, well, finality alone is enough to trump the defendant's right under the Constitution is enough. Well, I might differ slightly with saying that it's the only two interests are finality and incapacitation. Certainly the availability of witnesses can be said to go to finality. However, the interest in actually punishing someone, if you have a civil commitment, it's more about their health and well-being than necessarily it is about punishing. He is under criminal sentence, right? Although it's provisional. So, I think it's fair to classify that as punishment, isn't it? I don't think that it would be considered the same type of punishment that you would have in a regular sentencing, nor would it necessarily have the same deterrent effect. Well, maybe it doesn't have the deterrent effect because of the defendant's mental condition. I don't know.  and general deterrence as well. I mean, not just to the defendant, but to society in general. General deterrence, because, you know, he's incapacitated for the maximum period allowed by law, right? Correct. Well, how much more deterrence can you ask for? I think that would depend on how people look at whether you are going and staying in a medical center versus being in a regular correctional institution. There are differences. So, is that the interest that we should weigh in? It is an interest. I'm not saying that it is the exclusive interest, certainly. You know, you're arguing plain air, and we asked the defense counsel about plain air. Judge Cowan alluded to it. Does it really make any difference here? I mean, if we find that the defendant's constitutional interest outweighs the governmental interest, it doesn't really matter whether it's plain air. Probably not. Okay. So, that would essentially take that issue off the table. You might have a higher mountain to climb, but if you climbed, if you get there, you get there. Sure. And, you know, we have an argument here. We're arguing whether or not the cell factors apply to the sentencing of Mr. Cruz. And, the district court, after a rather brief hearing, I heard from the two medical personnel, Buechner, and a little bit from Mr. Cruz and counsel, said that it did. But the district court didn't evaluate some of the other issues. It didn't evaluate the substantial government interest. It did in the opinion. It mentioned it in the opinion. It didn't look at 4244. Perhaps, to have a clean record here, should this matter go back to the district court for them to more carefully look at this before we make a decision as to whether or not the cell applies to a circumstance such as this? Well, I think the reason that there was no analysis of the significant governmental interest is because that was never contested. So, there is that reason. As to the failure to examine 4244, I don't believe it was raised by either of the parties. The court didn't do it on its own. I don't know whether the parties were aware of it. Well, assume they had. They weren't aware of this section. They were certainly aware of the potential civil commitment and a provisional sentence up to the statutory maximum. Sure. So, if you're saying whether there may be error because the judge did not take into consideration the existence of 4244, I think there is potentially an argument there that that might actually be a harmless error. If you weigh the interests of Mr. Cruz, who is looking at if he is involuntarily medicated, restored to competency, that will actually allow Mr. to make departures from the current draft guideline range of 100 to 125 months. I think opposing counsel estimated it could go as low as 50 months. He's already been incarcerated for over three years. But if we don't involuntarily medicate him, if we don't have that sentencing hearing, none of that gets resolved, and instead he ends up provisionally sentenced for 20 years. So, there is an interest in Mr. Cruz's case. I think, though I do not wish to speak for Mr. Cruz, none of us can at this point, that he is facing potentially another year or two in prison at the very low end, or if he goes to a provisional sentence, he could be detained for 20 years. And then at that point, 4246 kicks in, and if he has still not been returned to competency, and is determined to be a danger on the outside world,  Mr. Cruz would have the choice if he's returned to competency. In effect, you agree with what the opposition counsel said. The question here is really a judicial question, a judicial interest. The court had to decide, and now we have to decide, was medication the right thing at this time to make Mr. Cruz competent at sentencing? Because it's not a question. I mean, the record doesn't show that the medication is going to make him competent long term. It's going to be a short term level of competency. In all likelihood, that is correct. I mean, they may choose to follow that kite on medication while in prison, but there's no assurance, and the court order doesn't require that. No, but it does give Mr. Cruz, if he's returned to competency, opposing counsel or his doctors can sit him down and explain to him, okay, if you go off of these medications again, you may never get out of prison. If, however, you continue voluntarily to take the antipsychotic medications, then you can serve your sentence, which could be anywhere again from 50 months up to 125. That seems to be the ranges that we're talking about here, depending on whether you go all the way in favor of the government or all the way in favor of Mr. Cruz, but it gives him that choice. So I think there is, there is certainly an interest there as to what choice Mr. Cruz would make. Obviously, I can't speak to that. So in essence, you're saying doing this the right way and making sure that Mr. Cruz is competent at the time you sentence and for a period thereafter is the appropriate way to deal with this and meets the interest of justice, substantial interest part of your argument. And that's exactly the point that I'm trying to make here today. Why would it be more appropriate to send this back to the district court to evaluate this application under 4244 as well, which it never considered so that we have a complete record as to the choices that the logical choices that could be made. Whereas right now we have nothing to indicate why, why a different attack should not be taken. And as has been stated, whether or other plain error or not, certainly if the court applied the wrong law, that would be plain error. Sure. I think I understand the idea in wanting to have a complete record and making sure that the district court considered everything. The only point I'm trying to make here is if you do that, there are two potential eventualities. One, he issues the exact same order and we're back here again. Or two, he decides to go with the provisional sentence, which puts Mr. Cruz away for at least 20 years barring his, his regaining competency. And I don't see how that is, is necessarily in the best interest of Mr. Cruz or in the best interest of justice. So I, that's why while it's difficult to say that there can be a harmless error when you're talking about involuntarily medicating someone, this is about as close as I think you could get to the potential of having an harmless, harmless error when those types of interests are at stake, because he has a countervailing liberty interest in not being incarcerated or detained or hospitalized for a dozen years more than he otherwise would be. All right. Now sort of addressing that same thing from another angle. A little while ago, you were all trying to stuff it off, really arguing the defense interest. In being medicated and, you know, all the good things that would come from that. And I thought about that. In fact, in terms of wondering, well, what practical interest is the defendant trying to protect, you know, and asserting the constitutional liberty interest in not being medicated. And I'm not sure I know what it is. Now, can we, you know, take account of these, of the practical interest. In other words, you know, well, we can have a quicker sentencing hearing. You know, he can talk to the doctor rationally. Right. And all these kinds of factors. Can we take those things into effect in weighing the defendant's liberty interest on that side? You know what I mean? The practical consideration. Sure. Yeah. Sure. I think we can, or rather you can, in weighing those practical considerations, because it goes to the fairness of the situation. It goes to the fact that we have some arguments, obviously, in the governmental interest being raised here for the first time. And we're responding by the governmental interest, lining up with the practical interests of Mr. Cruz, and at least giving him the opportunity to decide whether being on medications is better or worse than being in prison for 12 or more years, more than he otherwise would be. Okay, Mr. Cerruti. Thank you very much. Thank you, Your Honor. Mr. Ulrich. Just addressing two questions, or actually three from the court. One, there is one other case for what it's worth that has been in a similar procedural posture, albeit unpublished in a memorandum decision, but it's United States versus Perez. I'll probably mispronounce it. Keep your voice up. Rubel-Cava. And with respect to whether this could possibly be a Harper case, the judge made a finding on that particular point based upon the only evidence that was presented. So I don't believe the record would support characterizing this or changing it into a Harper-type proceeding. And finally, with respect to the practical considerations that might otherwise inform a decision, the cell court didn't outline practical considerations as one of the four bases that the court should consider. They talked about the seriousness of the offense. Unless the court has any additional questions. All right. Thank you, Mr. Ulrich. Thank you. We thank both counsel for a case that was very well argued, and we'll take the matter under adjustment.